**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Michael L. Jones, MBAJ Group, LLC, | ) | |
| Michael Anthony G. Wilbern, and | ) | |
| Wilbern Enterprises, LLC, | ) | No. 13 C 3269 |
| | ) | |
| Plaintiffs, | ) | Judge Thomas M. Durkin |
| | ) | |
| v. | ) | |
| | ) | |
| Culver Franchising System, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Michael Jones and Michael Anthony Wilbern (together the "individual plaintiffs") and their respective companies, MBAJ Group, LLC and Wilbern Enterprises, LLC (together the "corporate plaintiffs"), brought this lawsuit against Defendant Culver Franchising System, Inc. ("Culver"), alleging discrimination on the basis of race in violation of 42 U.S.C. § 1981 and intentional infliction of emotional distress ("IIED"). Culver moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and also moves pursuant to Rule 21 to sever the claims of Jones and MBAJ Group, LLC from the claims of Wilbern and Wilbern Enterprises, LLC. R. 20, 22. For the reasons explained below, Culver's motion to dismiss is granted in part and denied in part, and its motion to sever is denied without prejudice.

## Background

The following relevant and well-pleaded facts, drawn from plaintiffs' complaint, are accepted as true, and are set forth in the light most favorable to them. *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012). In evaluating Culver's motion to dismiss, the court considers both "documents attached to the complaint" and "documents that are critical to the complaint and referred to in it." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012).

Jones, an African-American, is the creator and sole member of MBAJ Group, LLC. R. 1 ¶ 2. Wilbern, an African-American, is the creator and sole member of Wilbern Enterprises, LLC. *Id.* ¶ 4. In late 2001 or early 2002, Jones, through his LLC, applied to Culver for a franchise opportunity. *Id.* ¶¶ 24-25. Pursuant to Culver protocol, after providing a down payment on Culver's franchise fee, Wilbern and Jones attended Culver's 16-week training program at Culver's Wisconsin headquarters. *Id.* ¶ 25. After successfully completing this training program, Jones became eligible to open his first Culver franchise. *Id.* ¶¶ 25-26.

Culver suggested that Jones locate his franchise in the Indianapolis market, and pursuant to that suggestion, Jones opened his franchise in Noblesville, Indiana on January 28, 2003. *Id.* ¶¶ 27-28. Jones hired Wilbern to serve as his general manager. *Id.* ¶ 28. Three years later, on January 31, 2006, Jones opened a second Culver franchise in Indianapolis, Indiana. *Id.* ¶ 39.

In May 2004, Culver proposed that Wilbern take a position as manager of a Culvers restaurant franchise in Lansing, Illinois. *Id.* ¶ 32. Wilbern accepted

2

Culver's proposal but only on the condition that he would soon be approved to own and operate his own Culver restaurant franchise in Chicago. *Id.* ¶¶ 32-33. Wilbern initially proposed two locations in Chicago that he believed to be promising: 95th Street and Stony Island, and 83rd Street and Stewart Avenue. *Id.* ¶ 34. Both sites would be in African-American communities and available at prices Wilbern considered fair. *Id.* Moreover, tax-increment financing ("TIF") was potentially available for these sites. *Id.* Culver indicated to Wilbern that it would consider these two locations, but Culver never approved them. *Id.* Instead, Culver recommended to Wilbern another site in Franklin Park, Illinois for his first franchise. *Id.* ¶ 35. Wilbern, in turn, proposed a site at 119th Street and Marshfield Avenue, another site that was in an African-American community and for which TIF funds were potentially available. *Id.* ¶ 36. Despite these site suggestions for franchise locations, Wilbern was never approved to open a Culver's franchise in a predominantly African-American community in Chicago. *Id.* ¶ 37. In November 2005, Wilbern, through his LLC, opened a Culver's franchised restaurant in Franklin Park, Illinois. *Id.* ¶ 38.

Plaintiffs initially found success with their franchises; indeed by 2006, "[they] were up and running as the only African-American franchisees in the Culver's system." *Id.* ¶¶ 30, 40, 43, 54. From 2006 to 2013, both Wilbern and Jones approached Culver to open additional Culver restaurants. Wilbern suggested on numerous occasions that Culver consider restaurants at the three Chicago locations he had previously identified. *Id.* ¶ 46. Wilbern particularly pushed for the 95th and

3

Stony Island location because he learned that $800,000 in TIF funds may have been available for that location. *Id.* ¶ 47. Culver, according to Wilbern, refused to allow him to expand into any of the African-American community sites that he identified; nor did it suggest any alternative sites for expansion. *Id.* ¶ 48.

Beginning in 2006, both plaintiffs experienced a variety of setbacks with their franchises that ultimately led to their closure or sale in 2012 and 2013. *Id.* ¶¶ 44, 58, 62. For Wilbern, the downturn was a result from a combination of several factors: (1) the receipt of "an unusually large tax bill" in 2006 from the Village of Franklin Park; (2) above-average leasing costs for his restaurant franchise; and (3) the opening of another nearby restaurant in 2010, which took customers away from Wilbern's Franklin Park Culver franchise. *Id.* ¶ 44. According to Wilbern, when he started to experience financial difficulties in 2006, he requested assistance from Culver in challenging the tax bill, renegotiating his lease, and refinancing with a bank, but Culver did not help him. *Id.* ¶¶ 45, 49. In March 2012, due to financial difficulties, Wilbern Enterprises, LLC filed for Chapter 11 bankruptcy. *Id.* ¶ 50. Despite the filing, Wilbern continued his efforts to secure refinancing so that he could emerge successfully from bankruptcy, but that effort failed, according to Wilbern, "due in substantial part to a lack of support from Culver[ ], which was content to let Wilbern fail." *Id.* ¶¶ 50-51. In November 2012, Wilbern closed the Franklin Park franchise. *Id.* ¶ 52. After Wilbern closed his franchise, the restaurant was acquired and reopened by two white franchisees, Guy and Kathy Hollis. *Id.* ¶ 53.

Meanwhile, Jones was running his two Culver franchises in Indiana. *Id.* ¶ 54. In 2010, Jones received an inquiry from the Indianapolis Colts about a possible joint marketing opportunity, but Culver was not interested in pursuing it. *Id.* ¶ 55. Nor was Culver interested in Jones's idea to pursue another Culver franchise in Noblesville or five Culver restaurants in Florida with Jones and his prospective partner, Dorian Boyland, an African-Ameircan. *Id.* ¶¶ 56-57. The downturn for Jones began in late 2011 and early 2012 when he learned that the State of Indiana was claiming that he had underpaid a sales tax bill to the State. *Id.* ¶ 58. From then on, Jones alleges, Culver failed to financially assist him. In February 2012, Culver pressed Jones to sell his franchises to a white franchisee named Jeff Meyer, but Jones resisted, believing that he could resolve the tax dispute with the State of Indiana. *Id.* ¶ 60. In April 2012, Culver announced that it was expanding into Florida but did not consider Jones and Boyland for that franchise opportunity, despite their prior proposals to pursue franchises there. *Id.* ¶ 59. Finally, in June, MBAJ Group, LLC filed for Chapter 11 bankruptcy; Culver urged Jones to sell both of his franchises to Meyer, which Jones finally agreed to do in February 2013. *Id.* ¶¶ 60-62.

The corporate and individual plaintiffs filed suit in this Court, bringing two counts. Count I alleges intentional discrimination in violation of 42 U.S.C. § 1981 on behalf of both the individual and corporate plaintiffs. *Id.* ¶¶ 65-66. They allege that Culver intentionally engaged in a pattern and practice of racial discrimination that denied    African-American    franchisees    the    same    resources,    support,    and

opportunities as non-African-American franchisees. *Id.* ¶ 77. According to plaintiffs, the franchise agreements Culver offered to them constituted contracts within the meaning of § 1981, and under § 1981, plaintiffs were entitled to the same right to the "enjoyment of all benefits, privileges, terms, and conditions of the [franchise] relationship" as white franchisees. *Id.* ¶ 67. Contained with that franchise agreement, plaintiffs say, was an express and implied contractual obligation by Culver to provide "reasonable assistance" to its franchisees and to allow them to "grow their businesses, expand into multi-unit ownership, and to avoid business failure." *Id.* ¶ 68. Plaintiffs allege that instead of fulfilling those obligations—which Culver did for numerous white franchisees—Culver reneged on them on account of plaintiffs' race. *Id.* ¶¶ 68, 75.

Specifically, Wilbern and Wilbern Enterprises, LLC claim that Culver violated § 1981 when it refused multiple, reasonable proposals to open Culver restaurant franchises in minority communities in Chicago—refusals that were "unlawfully motivated by considerations of race including the racial composition of the intended market area" and Wilbern's race. *Id.* ¶ 71. Wilbern contends that Culver further violated § 1981 when on account of his race, it steered him to the less than optimal Franklin Park franchise, subjected the franchise to unreasonably high real estate costs that white franchisees were not subjected to, and allowed the opening of a nearby restaurant over his protests, which Culver knew would cause his franchise to lose customers. *Id.* ¶ 74.  Ultimately, Wilbern alleges that the entire

relationship "was tainted by race" as his franchise was "made to feel unwelcome by Culver[ ] at every step of the way in the franchise relationship." *Id.* ¶ 76.

As for Jones and his company, they allege that Culver violated § 1981 when, on account of Jones's race, Culver refused their proposals to open additional Culver restaurants in Florida and Noblesville, Indiana. *Id.* ¶ 73. According to Jones, Culver blocked Jones's efforts to partner in marketing efforts with the Indianapolis Colts "for no reason other than race-based animosity to Jones," overreacted to Jones's problems with the State of Indiana regarding his underpaid sales taxes when it had previously ignored or downplayed comparable incidents by white franchisees, and schemed with a white franchisee to allow him to acquire Jones's franchises. *Id.* ¶ 75.

Count II alleges a state law claim for intentional infliction of emotional distress, a claim again brought on behalf of both the individual and corporate plaintiffs. *Id.* ¶¶ 82-83.

## Legal Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g.,* *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This "standard demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

## Analysis

## I.   Section 1981 Claims

42 U.S.C. § 1981 "protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474-75 (2006) (quoting 42 U.S.C. § 1981(a)). Section 1981 defines the making and enforcing of contracts as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Although § 1981 does not use the term "race," the Supreme Court has construed the section to "forbid all 'racial' discrimination in the making of private as well as public contracts." *Saint Francis Coll. v. Al–Khazraji*, 481 U.S. 604, 609 (1987). Section 1981 thus protects against racial discrimination that "blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship."

*Domino's Pizza*, 546 U.S. at 476; *see also Smiley v. Columbia Coll. Chi.*, 714 F.3d 998, 1002 (7th Cir. 2013).

Although the complaint lumps together the claims of the individual and corporate plaintiffs, the Court interprets the complaint to essentially raise two separate § 1981 claims: (1) Culver violated § 1981 when on account of race, it refused to provide reasonable financial assistance to the plaintiffs, assistance which Culver provided to white franchisees, thereby impairing an existing contractual relationship between Culver and plaintiffs; and (2) Culver violated § 1981 when it, on account of race, refused multiple, reasonable proposals by plaintiffs to open additional Culver franchises, thereby preventing them from entering into additional contractual relationships with Culver. Such separation of claims, the Court believes, is necessary to ascertain who has standing to bring them.

A.   **Section 1981 Claims Concerning Impairment of Existing Contractual Relationships**

1.   **Wilbern Enterprises, LLC and MBAJ Group, LLC**

In its motion to dismiss, Culver challenges the sufficiency of the allegations in the corporate plaintiffs' complaint to support a § 1981 claim. Relying on out-of-district precedent, Culver argues that their allegations lack sufficient factual specificity demonstrating that race was the reason for its actions.

At the outset, the Court notes that the corporate plaintiffs who were the parties to the franchise agreements with Culver have standing to bring a § 1981 claim here. *See Amber Pyramid, Inc. v. Buffington Harbor Riverboats, LLC*, 129 Fed. Appx. 292, 294 (7th Cir. 2005) (allowing corporation owned by two African-

American shareholders to maintain § 1981 suit) (citing cases); *see also Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004) (holding where corporation had acquired imputed racial identity and was direct target of discrimination, it had standing to pursue § 1981 claim).

Here, the corporate entities are each comprised of single members, Jones and Wilbern, who are African-American. R. 1 ¶¶ 2, 4. They represented the corporations at Culver's training program, annual meetings, and in other dealings with Culver throughout their franchise history. *Id.* ¶¶ 24, 25, 42. Accordingly, the corporate entities, who were parties to the franchise agreements with Culver, have acquired an imputed racial identity through their members and as alleged in the complaint were the target of racial discrimination. Each company therefore has standing to pursue a claim under § 1981. *See Shah v. Am. Bottling Co., Inc.*, No. 07-1042, 2008 WL 718435, at *4 (C.D. Ill. Mar. 14, 2008); *see also Calderon v. SW Bell Mobile Sys., LLC*, 390 F. Supp. 2d 714, 717 (N.D. Ill. 2005).

As for the substance of the allegations, to state a *prima facie* claim of discrimination under § 1981, a plaintiff must allege that "(1) he is a member of a racial minority; (2) the defendant[ ] had the intent to discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006).

Viewing the allegations in the light most favorable to them, the Court finds that the corporate plaintiffs have pled allegations that could plausibly support their § 1981 claims. At bottom, the corporate plaintiffs allege that their franchises

suffered and eventually failed as a result of intentional racial discrimination by Culver. They allege that Culver denied them the benefits, privileges, terms, and conditions of the franchise relationship that white franchisees received and that Culver did so because of their race. R. 1 ¶ 69. Specifically, the corporate plaintiffs allege that when they were in need of financial assistance for their franchises, Culver failed to assist them when Culver had in the past provided assistance to white franchisees. *Id.* ¶¶ 71-75.

Wilbern Enterprises, LLC specifically alleges that Culver steered it to the Franklin Park franchise, which was not an optimal location, on account of Wilbern's race, and allowed the franchise to be subjected to "unreasonably high real estate costs" to which white franchisees were not also subjected. *Id.* ¶ 74. Moreover, despite promises from Craig Culver to assist Wilbern Enterprises in obtaining a refinancing of its debt to help ease his cash flow burdens, Culver reneged on that promise. *Id.* ¶ 49. MBAJ Group claims that Culver approved its non-optimal franchise locations and blocked MBAJ Group's efforts to partner in marketing efforts with the Indianapolis Colts, all on account of Jones's race. *Id.* ¶¶ 73, 75. Culver further, according to MBAJ Group, LLC, overreacted to its problems with the State of Indiana regarding its underpaid sales taxes when it had previously ignored or downplayed comparable incidents by white franchisees, and schemed with a white franchisee to allow him to acquire MBAJ's franchises. *Id.* ¶ 75.

With these allegations, the corporate plaintiffs have stated a § 1981 claim of intentional racial discrimination to which they are plausibly entitled to relief.[1] The corporate plaintiffs have alleged that because of their racial identity, Culver impaired the existing contractual relationship between them by refusing to provide reasonable financial assistance, a benefit they allege they were entitled to receive under the franchising agreement. The Court finds that the corporate plaintiffs' allegations are sufficient to survival dismissal at the Rule 12(b)(6) stage, and Culver's motion to dismiss this part of their § 1981 claim is denied.

### 2.   Wilbern and Jones as Individuals

To state a claim under § 1981, a plaintiff must have rights under an existing contract that he wishes "to make and enforce." *Domino's Pizza*, 546 U.S. at 479-80. In other words, a plaintiff must be the person whose right to make and enforce a contract was impaired on account of race. *Id.* at 478.

Culver argues that unlike their corporate entities, the individual plaintiffs, Jones and Wilbern, were not parties to the franchising agreement with Culver, and accordingly, *Domino's Pizza* dictates that their individual § 1981 claims be dismissed. R. 21 at 6. Jones and Wilbern counter that with respect to the existing franchise agreement Culver regarded them, not their operating companies, as its franchisees. R. 27 at 5. Accordingly, Jones and Wilbern argue that they, as

---

[1] The Court reaches this conclusion regardless of whether the heightened standard Culver suggests applies to the corporate plaintiffs' allegations, R. 21 at 8 n. 1, or basic notice pleading standards are applied.

individuals, can assert a separate § 1981 claim apart from the § 1981 claims also brought by their corporations.

The Supreme Court's decision in *Domino's Pizza* is instructive here. There, McDonald, the individual plaintiff, brought a § 1981 claim alleging that Domino's Pizza had broken construction contracts that it had with his company—of which he was the sole shareholder—because of racial animus toward him. 546 U.S. at 472-73. Based, in part, on the failed contracts with Domino's Pizza, McDonald's corporation filed for Chapter 11 bankruptcy. *Id.* at 473. In deciding McDonald's § 1981 claim, the Court examined the language and history of § 1981 and determined that any claim brought under that section must identify an impaired contractual relationship under which the plaintiff had rights. *Id.* at 476-77. Ultimately, the Court concluded that McDonald could not bring a claim on behalf of himself because it was his corporation that had the contractual relationship with Domino's. In reaching that conclusion, the Court explained that "it is fundamental corporation and agency law—indeed, it can be said to be the whole purpose of corporation and agency law—that the shareholder and contracting officer of a corporation has no rights and is exposed to no liability under the corporation's contracts." *Id.* at 477. Further relevant to the Court's analysis was that the "corporate form and the rules of agency protected [McDonald's] personal assets, even though he 'negotiated, signed, performed, and sought to enforce' contracts" for his corporation. *Id.*

Jones and Wilbern attempt to distinguish *Domino's Pizza* by arguing that unlike their situation, the plaintiff in *Domino's Pizza* did not have an individual

"franchise relationship" with Domino's. According to Jones and Wilbern, their franchise relationship with Culver was established at the "individual level" because they were both, as individuals, initially approved to become franchisees and were "personally lulled into believing" that they would enjoy all the benefits of the franchise relationship as white franchisees enjoyed through their franchise relationship with Culver. R. 27 at 4. Moreover, unlike the plaintiff in *Domino's Pizza*, Jones and Wilbern allege that Culver regarded them, not their operating companies, as the franchisees. In support of this claim, Jones and Wilbern point to Culver's 2009 franchise disclosure document, which specifically names individual owners of its franchised restaurants like Jones and Wilbern (not their operating companies) as their franchisees. *Id.* at 5-6 n. 3 & 4.

Jones and Wilbern cannot have it both ways with respect to the existing contractual relationships with Culver. On the one hand, they argue that Culver regarded the individual owners, not their operating companies, as the franchisees. But, on the other hand, they argue that their operating companies may also bring separate § 1981 claims as parties to the franchise agreements. Indeed, the 2009 franchising document that Jones and Wilbern point to as demonstrating that Culver considered individuals as the franchisees also demonstrates, according to Jones and Wilbern, that Culver viewed the individual's operating company as its franchisee. R. 27 at 6 n. 4.[2]

---

[2]  In ruling on a motion to dismiss, the Court can consider the complaint, documents attached to the complaint, and documents critical to the complaint and referred to in it. *Geinosky*, 675 F.3d at 745 n. 1. The 2009 franchising disclosure document,

Jones's and Wilbern's complaint identifies their companies as the owners and operators of the franchises. R. 1 ¶¶ 2, 4. Jones and Wilbern do not dispute that like *Domino's Pizza*, the relevant contractual relationships for purposes of their § 1981 claim are the ones between Culver and Wilbern Enterprises and Culver and MBAJ Group. *Id.* Moreover, just as in *Domino's Pizza*, although Jones and Wilbern, as agents of the companies, negotiated, signed, performed, and now seek to enforce the contracts on behalf of their companies, they, as individuals, are not exposed to personal liability under the corporation's contracts. When the franchises went out of business, it was the corporations, not the individuals, who filed for Chapter 11 bankruptcy. *Id.* ¶¶ 50, 61.

Ultimately, the allegations of the complaint make clear that Jones and Wilbern are attempting to establish for purposes of this part of their § 1981 claim that they and their companies have one inseparable racial identity. It therefore follows that that the individual and corporate plaintiffs cannot then become separate for the purposes of pursuing what are duplicative claims in a lawsuit. Even Jones and Wilbern acknowledge the difficulty in being allowed to double count damages sought for the claim brought by the corporate entities and the claim brought by the individuals should both of these claims reach trial. R. 27 at 6. Accordingly, because the corporate plaintiffs were the parties to the franchise

which Jones and Wilbern attached to their opposition brief, was not referenced in their complaint. Even if this Court were inclined to consider this document, the implications of the facts in it do not definitively resolve this aspect of Jones's and Wilbern's § 1981 claims in their favor. Instead, they merely enhance the inconsistency in their argument.

agreements at issue and because both the individuals and their corporate entities will be unable to recover damages for both of their § 1981 claims, Jones's and Wilbern's individual § 1981 claims regarding the impairment of the existing contractual relationships must be dismissed.

**B.      Section 1981 Claims Regarding The Prevention from Entering into Additional Contractual Relationships**

The corporate and individual plaintiffs also seek to invoke § 1981 on the basis that they were prevented from entering into additional contractual relationships with Culver. This argument fares much better for the individual plaintiffs. In *Domino's Pizza*, the Supreme Court held that to bring a § 1981 claim, a contractual relationship "need not already exist, because § 1981 protects the would-be contractor along with those who already have made contracts." 546 U.S. at 476. Thus, "[s]ection 1981 [also] offers relief when racial discrimination blocks the creation of a contractual relationship . . . so long as the plaintiff . . . would have rights under the . . . proposed contractual relationship." *Id.*

Here, Wilbern and Wilbern Enterprises, LLC allege that Culver violated § 1981 when it refused multiple, reasonable proposals to open Culver restaurant franchises in minority communities in Chicago—refusals that were "unlawfully motivated by considerations of race including the racial composition of the intended market area" and Wilbern's race. R. 49 ¶ 71. As for Jones and MBAJ, Group, LLC, they allege that Culver violated § 1981 when, on account of Jones's race, Culver refused proposals to open additional Culver restaurants in Florida and Noblesville, Indiana. *Id.* ¶ 73. Culver also, according to Jones and MBAJ Group, LLC, refused to

consider proposals to open additional Culver franchises in Florida with prospective partner Dorian Boyland, who was African-American, when it was, in fact expanding the Culver's brand into Florida, and that refusal was unlawfully motivated by the race of Jones and Boyland. *Id.* ¶ 72.

Viewing these allegations in the light most favorable to the corporate and individual plaintiffs, the Court finds them sufficient to state a § 1981 claim that Culver wrongfully (based on the race of the individuals and the racial identity of the corporate entities) denied Wilbern and Jones and their corporate entities the opportunities to enter into additional franchise agreements with it. Culver contends that Jones and Wilbern do not have standing as individuals to bring these claims because their desire to expand their businesses necessarily relate to the activities of their corporate entities, which were seeking to expand. But in their opposition brief, Jones and Wilbern assert that they personally were prevented from entering into these contractual relationships, and they contend that they were under no obligation to enter into the additional franchise agreements they sought with Culver using the same operating companies and that they could have formed new operating companies for future franchise agreements.[3] Absent from Culver's reply brief is any response to these contentions.

At this stage, the Court finds that with these allegations, the corporate and individual plaintiffs have plausibly alleged that they were prevented from entering

---

[3]   The Court may consider relevant facts drawn from the individual plaintiffs' opposition brief to Culver's motion to dismiss insofar as they are consistent with the complaint. *See Geinosky*, 675 F.3d at 745 n. 1.

into additional contractual relationships with Culver in violation of § 1981. They may therefore proceed with this claim. That said, the Court is mindful of the potential double recovery problems that could result should this part of the § 1981 claim of both the corporate and individual plaintiffs go to trial. Jones and MBAJ Group, LLC and Wilbern and Wilbern Enterprises, LLC should be aware (as they seem to be, R. 27 at 6), that Culver has a legitimate and well-founded concern about being subjected to double counting damages should this aspect of their § 1981 claim make it to trial.[4]

## II.   State Law Intentional Infliction of Emotional Distress Claims

Culver also moves to dismiss the state law intentional infliction of emotional distress claims of both the individual and corporate plaintiffs, arguing that the complaint lacks sufficient factual allegations to support such a claim. Plaintiffs dispute this, claiming that "certainly on the facts of this case, intentional discrimination on account of race that results in the destruction of an African-American's business is by definition 'extreme and outrageous' and is not 'petty oppression' or trivial." R. 27 at 10-11.

To state a cause of action for intentional infliction of emotional distress under Illinois law, plaintiffs must adequately allege that the defendant's conduct was "truly extreme and outrageous," that the defendant either intended to inflict severe emotional distress, or knew that there was a high probability that its conduct would

---

[4] The Court notes that allowing the claims of both the individual and corporate plaintiffs to proceed should not affect the scope of discovery.

do so, and that the defendant's conduct in fact caused severe emotional distress.[5] *McGrath v. Fahey*, 126 Ill. 2d 78, 86 (1988). The defendant's conduct must, in an objective sense, be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 702-03 (7th Cir. 1993) (internal quotation marks omitted); *see also Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 154 (1st Dist. 1999) (stating "mere insults, indignities, threats, annoyances, petty oppressions or trivialities" are insufficient). Moreover, the emotional distress inflicted must be "so severe that no reasonable man could be expected to endure it." *Harriston*, 992 F.2d at 703 (internal quotation marks omitted); *see also Welsh*, 306 Ill. App. 3d at 155.

In the employment context, Illinois courts have recognized that personality conflicts and questioning of job performance are "unavoidable aspects of employment," which can "frequently . . . produce concern and distress." *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997) (internal quotation marks omitted). Recognizing, however, that allowing the distress resulting from these types of incidents to constitute severe, actionable conduct would result in the ability of nearly all employees to bring an IIED cause of action, Illinois courts have limited recovery on these claims to cases in which the employer's conduct has been "truly egregious." *Id.* at 567-68 (citing cases).

At the outset, Culver argues in its motion to dismiss that the IIED claims of the corporate plaintiffs should be dismissed with prejudice because (1) plaintiffs

---

[5] The parties are in agreement that Illinois law governs the analysis.

cannot demonstrate that corporations can bring IIED claims; and in any event, (2) the complaint fails to allege any emotional distress actually suffered by the corporations. The corporate plaintiffs in turn failed to respond to this argument in their opposition brief. By doing so, the Court assumes that the corporate plaintiffs concede this argument and no longer wish to pursue their IIED claims. *See Norhurst, Inc. v. Acclaim Sys., Inc.*, No. 11 C 7222, 2012 WL 473135, at *2 (N.D. Ill. Feb. 9, 2012) ("By failing to respond to Acclaim's argument, [the plaintiff] has conceded it."). Indeed, at the status hearing held on December 9, 2013, the corporate plaintiffs conceded that the IIED claims against them should be dismissed. Accordingly, the IIED claims of the corporate plaintiffs are dismissed with prejudice.

As for the claims of the individual plaintiffs, in support of that claim, Jones and Wilbern contend that their "entire relationship" with Culver "was tainted by race" as they were "made to feel unwelcome by Culver[ ] at every step of the way in the franchise relationship, beyond the initial franchise sale." R. 1 ¶ 76. They additionally allege that with respect to their franchises, Culver not only allowed them to fail but also "worked against" them "to make their respective business failures substantially more likely, and then worked against them to make sure that they received less than fair value when they could no longer keep their restaurant doors open for business." *Id.* ¶ 75.

Even viewing these allegations in the light most favorable to Jones and Wilbern, these allegations are insufficient to put Culver on notice as to its allegedly

extreme and outrageous conduct that went beyond all possible bounds of human decency. Jones and Wilbern offer vague statements that they were "made to feel unwelcome" and conclusory statements that business decisions made by Culver were motivated by racial animus. But none of these statements provide any additional factual allegations indicating that Culver's conduct was so extreme and outrageous as to warrant liability. Nor do plaintiffs in their opposition brief elaborate on the specific conduct warranting liability on this claim. Plaintiffs instead merely refer to the alleged lengthy, intentional racial discrimination they suffered, which "by definition" was extreme and outrageous. R. 27 at 10-11. Because plaintiffs fail to allege any specific facts regarding the conduct Culver engaged in that caused them severe and emotional distress as they must, this count must be dismissed. *See, e.g.*, *S.J. v. Perspectives Charter Sch.*, 685 F. Supp. 2d 847, 860 (N.D. Ill. 2010) (dismissing IIED claim where plaintiff failed to allege any specific facts demonstrating elements of IIED claim, especially the egregious conduct required); *Douglas v. Lofton*, No. 12 C 8592, 2013 WL 2156053, at *10 (N.D. Ill. May 17, 2013) (citing cases where IIED claims were dismissed at pleadings stage for failure to allege sufficiently extreme and outrageous conduct).

Culver suggests that the IIED claims of the individual plaintiffs should be dismissed with prejudice. R. 21 at 3. But "[w]hen a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity, at least upon request, to amend the complaint to correct the problem if possible." *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013). *See also Foster v. DeLuca*, 545 F.3d

21

582, 584 (7th Cir. 2008) ("District courts routinely do not terminate a case at the same time that they grant a defendant's motion to dismiss; rather, they generally dismiss the plaintiff's complaint without prejudice and give the plaintiff at least one opportunity to amend her complaint."); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). The intentional infliction of emotional distress claims of the individual plaintiffs are therefore dismissed without prejudice. The Court is skeptical that Jones and Wilbern can successfully replead because any facts relating to the IIED claims are within the knowledge of Jones and Wilbern, and presumably would have already been alleged in the present complaint. Nonetheless, despite the Court's skepticism regarding the claim's prospects for success, *Foster*, 545 F.3d at 584-85 (7th Cir. 2008), the individual plaintiffs will be given an opportunity to amend their complaint to try to cure the identified deficiencies in this claim, *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010).

## III.   Culver's Motion to Sever for Misjoinder

Culver also moves to sever the claims of Jones and MBAJ Group, LLC from the claims of Wilbern and Wilbern Enterprises, LLC into separate actions. In support of this claim, Culver argues that the claims made by Jones and his business are separate and distinct from the claims of Wilbern and his business. Nor do the factual allegations made by Jones and MBAJ Group, Culver contends, share any meaningful similarity with those of Wilbern and Wilbern Enterprises. Plaintiffs respond that joinder is proper because they both had the same franchise

relationship with Culver; they were both subject to the same standards for expansion and assistance from Culver; and they both suffered racial discrimination by the same decision-makers at Culver in substantially the same manner—namely being denied reasonable expansion opportunities and the assistance white franchisees received, and having their franchised restaurants acquired by white franchisees. Plaintiffs moreover point to one major commonality between their claims—they stem from a company-wide discriminatory policy against African-American franchisees. R. 1 ¶¶ 76-79.

Rule 20 of the Federal Rules of Civil Procedure permits parties to join as plaintiffs in one action if "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(A)-(B). When parties are misjoined, Rule 21 authorizes a court, either on its own or on a motion, to "sever any claim against a party," and to "on just terms, add or drop a party." Fed. R. Civ. P. 21. Thus, for joinder to be proper, plaintiffs' claims must arise out of the same transaction or occurrence or series of transactions or occurrences, and there must be a question of law or fact common to all the plaintiffs' claims. *See Bailey v. N. Trust Co.*, 196 F.R.D. 513, 515 (N.D. Ill. 2000). "Rule 20 should be construed in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Id.* (internal quotation marks

omitted). When deciding whether joinder of parties is proper, the district court has wide discretion. *Id.*

Courts have held that plaintiffs who allege a companywide policy of discrimination can establish that their claims arise out of the same series of transactions or occurrences. *See Nelson v. Chertoff*, No. 07 C 2991, 2008 WL 4211577, at *5 (N.D. Ill. Sept. 10, 2008) (internal quotation marks omitted). Relatedly, courts have concluded that an alleged company-wide policy of racial discrimination is sufficient to establish a common question of fact, even if the plaintiffs all suffered different effects of the alleged discriminatory policy. *See id.* at *6; *Smith v. Northeastern Ill. Univ.*, No. 98 C 3555, 2002 WL 377725, at *3 (N.D. Ill. Feb. 28, 2002) (citing cases).

In determining whether a factual scenario constitutes a single transaction or occurrence for purposes of Rule 20(a)'s "common transaction or occurrence" requirement, courts employ a case-by-case approach, *Bailey*, 196 F.R.D. at 515, and consider a number of factors, including:

> the time period during which the alleged acts occurred, whether the acts of discrimination are related, whether there were differing types of adverse employment actions, whether more than one type of discrimination is alleged, whether the same supervisors were involved, whether employees worked in the same department, whether employees were at different geographical locations, and whether a company-wide policy is alleged.

*Nelson*, 2008 WL 4211577, at *6.

Application of the above factors weighs in favor of joinder, at least at this early stage of the case. Plaintiffs allege that they will be able to establish that the

24

same decision-makers at Culver were responsible for the discrimination plaintiffs suffered. They, moreover, claim that Culver engaged in a pattern and practice of intentional racial discrimination against both them specifically and African-American franchisees generally. R. 1 ¶¶ 77-79 (further referring to "overriding culture of discrimination that Culver[ ] creates and tolerates"). Based on these considerations, the Court finds that plaintiffs have demonstrated, at this point, that their claims arise out of the same series of transactions or occurrences and that there is a common question of fact that connects their two claims. Rule 20(a)'s two requirements have thus been satisfied, and the Court declines to sever the two cases for misjoinder at this time.

The denial is without prejudice, subject to renewal at the close of discovery when the record is likely to be more clearly developed. Central to this Court's determination to deny Culver's motion to sever at this time is the Court's observation that the interests of economy and convenience that would result from consolidated discovery and motion practice appear to outweigh the legitimate but early concern of prejudice to Culver in hearing all of plaintiffs' claims in a joint trial. The parties are currently in the process of discovery, and are fleshing out the various factual issues. Accordingly, at this time, the Court declines to sever plaintiffs' claims and denies Culver's motion to sever without prejudice. *See Nelson*, 2008 WL 4211577, at *6-7. Culver may renew its motion to sever at the close of discovery when it can be more readily determined whether there is a sound factual

basis for plaintiffs' claims that a company-wide discriminatory policy exists against African-American franchisees.[6]

## Conclusion

For the foregoing reasons, Culver's motion to dismiss, R. 20, is granted in part and denied in part. The parties shall proceed with the § 1981 claims consistent with the parameters described above in the Court's Order. As for the intentional infliction of emotional distress claims, the Court grants Culver's motion to dismiss the intentional infliction of emotional distress claims of the corporate plaintiffs. These claims are dismissed with prejudice. The Court further grants Culver's motion to dismiss Jones's and Wilbern's individual claims for intentional infliction of emotional distress. These claims, though, are dismissed without prejudice. Should Jones and Wilbern wish to replead these claims, an amended complaint is due in 30 days. Culver's motion to sever, R. 22, is denied without prejudice.

ENTERED:

Thomas M. Durkin
United States District Judge

Dated:  December 20, 2013

---

[6]  If found to be appropriate, severance of the claims of Jones and MBAJ Group, LLC from the claims of Wilbern and Wilbern Enterprises, LLC into separate actions would likely result in the claims of Wilbern and Wilbern Enterprises, LLC—the plaintiff with a connection to Illinois—remaining in this Court. If severed, venue for the claims of Jones and MBAJ Group would likely lie in a district court in Indiana, as plaintiffs agreed at the December 9, 2013 status hearing.